James Palermo v. Commissioner.
Palermo v. Commissioner
Docket No. 38750.
United States Tax Court
T.C. Memo 1954-74; 1954 Tax Ct. Memo LEXIS 172; 13 T.C.M. (CCH) 565; T.C.M. (RIA) 54180; June 24, 1954, Filed *172 Upon the facts, held, that during the years 1946-1949, petitioner was engaged in a business of buying and selling power shovels and similar equipment. Held, further, upon the facts, that the net loss sustained in 1949 is attributable to the operation of a business regularly carried on by the petitioner. H. E. Russert, Esq., 711 Mahoning Bank Building, Youngstown, Ohio, and Sidney Rigelhaupt, Esq., for the petitioner. Robert E. Johnson, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined *173 deficiencies in income tax for 1947 and 1949 in the amounts of $53,619.33 and $13,677.13, respectively. The petitioner does not contest certain adjustments made by the respondent. The chief question to be decided is whether a loss sustained by the petitioner in 1949 was attributable to the operation of a trade or business regularly carried on by petitioner. Findings of Fact The facts which have been stipulated are found accordingly. The stipulation of facts and the attached exhibits are incorporated by this reference. The petitioner is a resident of Sebring, Ohio. He filed returns for 1947 and 1949 with the collector for the eighteenth district of Ohio. Petitioner reported his income and kept his books on a cash and calendar year basis. From 1925 to 1941 and thereafter, petitioner was engaged in the business of mining coal, first through deep shaft mining and later by strip mining. In 1947, 1948 and 1949 petitioner was engaged in several businesses. In 1947 and thereafter, he was the sole proprietor of Harrisburg Coal Company and Alberta Coal Mining Company, and he was a partner in two separate partnerships, Sebring Coal Company and Indian Run Coal Company. He managed the businesses *174 of the four firms. In 1948, Alberta Coal Mining Company became a partnership in which petitioner was a partner. Petitioner's income in 1947 and 1948 from coal mining amounted to $35,888.85. During the year of 1947 only, petitioner operated another business, a sole proprietorship under the name of Marion Coal Company. In 1947 and during the first three months of 1948, petitioner conducted a tavern business known as Crystal Bar. In the years 1947 to 1949, petitioner also carried on a proprietorship business in the name of Palermo Trucking Company. On November 5, 1945, petitioner organized an Ohio corporation, Sebring Tractor & Equipment Company. Petitioner acquired all of the stock of this corporation but some shares were held in the names of qualifying stockholders. He was president of the corporation. The corporation ceased doing business in 1947 and was dissolved on September 24, 1947. During the War years and until about October 1948, there was a demand for power shovels which exceeded the number of shovels available for immediate delivery. The Marion Power Shovel Company of Marion, Ohio, hereinafter referred to as Marion Power Shovel Co., had a substantial backlog of orders for *175 power shovels. Because of the backlog of orders and the length of time required to build an individual power shovel, there was a considerable timelag between the date of the placing of an order with Marion Power Shovel Co. and its delivery of a power shovel. Petitioner was aware of this condition on the market. He learned that operators of strip coal mining firms were willing to pay a premium in excess of the manufacturers' selling prices in order to obtain delivery of power shovels in advance of the date which they could obtain delivery if they placed orders with the manufacturer. Petitioner conceived the idea of placing orders with Marion Power Shovel Co. so that his orders would be on file and accepted by the manufacturer ahead of other possible orders from other possible buyers. He did not intend using any of the shovels which he ordered in any of his business enterprises. He intended canvassing the market of potential buyers in order to offer them, at a premium, shovels which were on order by him. In accordance with his plan, orders were placed with Marion Power Shovel Co. for various types of equipment. The dates on which the orders were placed with Marion Power Shovel Co. *176 , the type of equipment, and the prices to be paid by petitioner, were as follows: Equip-
Price
ment
to
Date of
Num-
Type of
Peti-
Order
ber
Equipment
tioner
A.
5/23/46
8531
111-M Shovel
$73,625
B.
7/15/46
362
362-Coal loaders
C.
10/16/46
8589
40-A Shovel
72,950
D.
1/ 3/47
8556
111-M Shovel
86,685
E.
6/12/47
7200
7200 Shovel
F.
4/ 1/48
8896
111-M Shovel
99,900
G.
4/ 1/48
8890
111-M Shovel
99,900
H.
4/ 1/48
8892
111-M Shovel
99,900
I.
4/ 1/48
8897
111-M Shovel
99,900
J.
4/ 1/48
111-M Shovel
K.
4/ 1/48
111-M Shovel
L.
12/15/49
Dragline
9,952
The prices which petitioner was to pay for the equipment which he ordered were the list prices of Marion Power Shovel Co. Under each order petitioner paid Marion Power Shovel Co. a deposit of $1,000 and he agreed, in the purchase contracts, to pay the total purchase price on the date of delivery. Of the 12 orders (listed above) placed with Marion Power Shovel Co. four were cancelled, as follows: Date of
Orders Cancelled
Cancellation
# 362 Coal loaders
8/ 4/47
111-M Shovel
12/ 9/48
#7200 Shovel
3/10/49
111-M Shovel
3/11/49
*177 The petitioner located purchasers for eight items of equipment. His agreement with these buyers was, that he would arrange with the manufacturer, Marion Power Shovel Co. to ship equipment directly to them. In other words, petitioner never took delivery of any item of equipment. He received invoices from Marion Power Shovel Co. under which he was charged the manufacturer's list price; petitioner paid the manufacturer's invoice; and petitioner received payment from his vendee. In some instances a shovel was ready for delivery before petitioner found a buyer. In that situation the shovel was stored with the manufacturer. Petitioner, in 1947 and 1948, located purchasers for four shovels who were willing to pay him a premium, and in these transactions petitioner realized a profit in the total amount of $62,878.62. At some time in the latter part of 1948, the market for power shovels and similar equipment changed. By May, 1949, Marion Power Shovel Co. had orders from others for only 3 shovels. Petitioner was unable to find purchasers from August, 1948 willing to pay him a premium for equipment which he then had stored with the manufacturer. Also, in November of 1949, petitioner was *178 pressed by his bank for repayment of loans, and there was a balance due on his 1947 Federal income tax in the amount of about $34,880. In the middle of 1948, three power shovels were ready for delivery, namely, numbers 8890, 8892, and 8897. Petitioner paid Marion Power Shovel Co. for these shovels but they remained with the manufacturer in storage because petitioner had not yet located a purchaser. These three shovels were disposed of in the following way: The Marion Power Shovel Co. agreed to repurchase shovel #8897 for $60,000; petitioner resold this shovel to the manufacturer on December 30, 1949. In December of 1949, petitioner sold shovels #8892 and #8890, together with a dragline attachment, at a loss. After the completion of the transactions described above, petitioner neither bought nor sold any power shovels or similar equipment. The following schedule shows the dates on which petitioner paid Marion Power Shovel Co. for each item of equipment; the date of delivery upon resale to petitioner's vendees; and the petitioner's profit or loss on each transaction: Date of
Date of
Peti-
payment
delivery
tioner's
Item of
by peti-
to
Profit
Equipment
tioner
vendee
or Loss
Shovel #8589
3/25/47
5/ 3/47
$28,375.00
Shovel #8531
4/23/47
5/ 8/47
Shovel #8556
6/24/47
10/15/47
19,191.12
Shovel #8896
7/12/48
8/10/48
15,312.50
Shovel #8897
7/12/48
11/30/49
(124,399.14)
Shovel #8890
6/29/48
12/ /49
Shovel #8892
7/12/48
12/ /49
Dragline
12/ /49
12/ /49
*179 Petitioner was not an authorized dealer or agent of Marion Power Shovel Co. That company did not have any authorized agent in Ohio. The company knew about petitioner's transactions and did not make any objection to them. Petitioner actively solicited buyers for power shovels and similar equipment. He visited mine operators and equipment dealers in Pennsylvania, Missouri, and Oklhoma. He attended various mining and road equipment exhibits held in Bluefield, West Virginia, Chicago, and Cleveland. He advertised shovels for immediate sale. He contacted at least one exporter of equipment. Through these activities, the petitioner became known as a dealer in power shovels. Petitioner treated the gains realized upon the sales which he made to his vendees in 1947 and 1948 as short-term capital gains. As is shown in the above schedule, the interval of time elapsing between petitioner's payments for each of the items of equipment which were resold at a profit and the date of shipment to petitioner's vendees was, in two instances, less than 30 days; in one instance about 40 days; and in another instance about 3 1/2 months. In his return for 1949, the petitioner deducted $124,399.14, the *180 entire amount of his loss from the disposition of three power shovels and a dragline in that year. The petitioner sustained a loss in 1949 in the net amount of $124,399.14. Petitioner was engaged in a business of buying and selling power shovels and similar equipment during the years 1946, 1947, 1948, and 1949. In 1949, he held power shovels and equipment primarily for sale to customers in a business regularly carried on by him and the loss sustained in 1949 was attributable to that business. Opinion It is agreed that a net loss from sales of shovels in the amount of $124,399.14 was sustained in 1949. The chief question is whether the petitioner's activities in buying and selling power shovels and related equipment constituted a business regularly carried on by him. Admittedly there is a deficiency in income tax for 1947 unless the deficiency is reduced or eliminated by the carrying back of a net operating loss from the year 1949. The petitioner claims that he had a net operating loss in 1949, within the meaning of section 122(a) of the Code, from the operation of a business of buying and selling power shovels and similar equipment. The respondent contends that the net loss *181 is not attributable to the operation of a business regularly carried on by petitioner and that consequently the limitations provided in section 122(d)(5) apply. The respondent contends that the business which petitioner regularly carried on was that of mining coal by the stripping process. Respondent contends also that the loss in question was a loss incurred in the sale of capital assets within the scope of section 117 of the Code. He stresses the fact that the three shovels which were sold in 1949 had been stored at the factory of Marion Power Shovel Co. for about one and one-third years before the sales in 1949. Originally there was a further question whether interest on the amount of petitioner's 1947 income tax deficiency remains as an obligation of petitioner against which the tentative carry-back adjustment would properly apply. Petitioner concedes that the respondent's position is correct. Whether or not the petitioner, in 1949, was engaged in a business of buying and selling equipment is a question of fact. Also, the correlative question of whether the pieces of equipment which were sold in 1949 were capital assets is a question of fact. We shall consider first the question *182 of whether the petitioner was regularly engaged in buying and selling equipment. The petitioner does not deny that in 1949 and before, he regularly carried on a business of mining coal by the stripping process as a sole proprietor. Also, he was a member of partnerships engaged in coal stripping operations, and it appears that petitioner was engaged in some other businesses on a small scale. But these factors do not necessarily defeat petitioner's claim that he was regularly engaged in another business, the buying and selling of power shovels. A taxpayer can be engaged in more than one business. . Upon consideration of all of the evidence, we are satisfied that petitioner regularly carried on a business of buying and selling power shovels and similar equipment during 1946, 1947, 1948, and 1949. In arriving at this conclusion, we have taken into account the purpose for which petitioner bought and held the shovels, which was for immediate resale upon completion and delivery by the manufacturer, the number and the frequency of the sales, the substantiality of the sales, and the extent of petitioner's activities in making the sale. *183 ; Nathan D. Goldberg, 22 T.C. - (June 11, 1954). It is held that the shovels sold in 1949 were held primarily for sale to customers in the ordinary course of a business of petitioner. It is held, further, that the loss in 1949 was attributable to the operation of a business regularly carried on by petitioner within the scope of section 122(d)(5). Our considerations do not have to be limited to the facts which existed in 1949. ; , affirming ; . The seven shovels were completed for petitioner between March 1947 and July 1948, and were resold by petitioner between May 1947 and December 1949. We have found that the seven shovels were acquired and held by petitioner primarily for the purpose of resale. Each of the shovels resold by petitioner in 1947 and 1948, for example, was sold either before or shortly after Marion Power Shovel Co., forwarded invoices advising of completion of a shovel. None of the seven shovels was ever used by petitioner or by any *184 of the partnerships in which he had an interest. Petitioner would not take delivery of any completed shovel and each shovel remained on the premises of Marion Power Shovel Co. until resold by petitioner and shipped to the new purchaser pursuant to petitioner's shipping instructions. Petitioner's conduct convinces us that the shovels were procured and held primarily for resale. Under the circumstances of this case, the number and substantiality of petitioner's sales also support the contention that petitioner was carrying on a business of selling shovels. The seven shovels were sold in a period of approximately two and one-half years. Sales averaging two or three per year do not exclude the existence of a business, see We think this is particularly true in this case where the articles sold are for special use and cost between $72,950 and $99,900 each. Such sales record, according to the testimony of Marion Power Shovel Company's credit manager, would be phenomenal in some areas. Petitioner's profit from the sales of shovels in 1947 and 1948 amounted to $62,878.62, whereas his income in these years from the operation of the strip mines was no greater *185 than $35,888.85. The evidence also shows that petitioner actively solicited buyers for the shovels. He visited mine operators and equipment dealers in Pennsylvania, Missouri, and Oklahoma, and attended various mining and road equipment shows held in Bluefield, West Virginia, Chicago, and Cleveland. He also advertised his shovels, contacted at least one exporter of equipment, and acquired a reputation as a dealer in power shovels. Petitioner did not sell any of the three remaining power shovels between August 1948 and November 1949. During this period, the demand for power shovels dropped sharply due to changed conditions in the coal industry, and by May 1949, the Marion Power Shovel Co. itself had orders for only three type 111-M shovels. However, petitioner continued to hold the shovels for sale and did not halt his efforts to obtain buyers. We do not think that the lack of sales due to the lack of a market militates against the conclusion that petitioner remained in the business of selling power shovels. Respondent's determinations under this issue are reversed. The pieces of equipment sold in 1949 were not capital assets; petitioner is *186 entitled to carry the 1949 net operating loss back to 1947. Decision will be entered under Rule 50.